IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   CR. NO. 2:21-CR-49-MHT-JTA-3 |
| | ) |
| WILLIAM RICHARD CARTER, JR. | ) |

## NOTICE OF INTENT TO USE 404(b) EVIDENCE

Comes now the United States of America, by and through Verne H. Speirs, Attorney for the United States Acting Under Authority Conferred by 28 U.S.C. § 515, and notices its intent to introduce extrinsic evidence of other crimes, wrongs, and acts committed by the defendant, Rick Carter. This evidence relates to an investigation into Carter's tenure as principal at Jacksonville High School and his subsequent resignation from that position. The government intends to introduce this evidence to show motive and knowledge.

### I. PROCEDURAL HISTORY

**A.   Indictment**

On January 13, 2021, the grand jury returned a 127-count indictment against Defendant William Richard Carter, Jr., as well as five co-defendants. Doc. 1. The indictment charges Carter with: (1) one count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 371, see id. at 1–61, ¶¶ 1–257; (2) 85 counts of wire fraud, in violation of 18 U.S.C § 1343, see id. at 61–72, ¶¶ 258–263; and (3) 35 counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), see id. at 72–76, ¶¶ 264–65.

The indictment generally alleges a scheme whereby public school superintendents, Defendant William L. Holladay, III (Trey Holladay) (the superintendent of the Athens, Alabama

1

City School System (ACS), *see id.* at 1, 3–5, ¶ 1, 7–15) and Defendant Thomas Michael Sisk (the superintendent of the Limestone County, Alabama School System (LCS), *see id.* at 3, 5–6, ¶ 6, 16–18), caused identifying and educational information pertaining to full-time private school students to be inputted into their respective systems' student enrollment databases so that the private school students appeared as public virtual school students, *see generally id.* at 20–28, 43–44, ¶¶ 74–105, 171–75.[1] To obtain the student information, the superintendents offered and caused to be offered various benefits to administrators at various private schools, including: laptop computers, access to online courses, increased internet capabilities, standardized testing, and monetary payments. *Id.* at 19, ¶ 70.

As a result of the false reporting of the private school students, when the Alabama State Department of Education (ASDE) looked at those databases to determine what per pupil funding the state owed the school systems, the ASDE calculated amounts that were greater than the systems would have been entitled to receive had their enrollment numbers been accurate. *Id.* at 29, 44–45, ¶¶ 111–14, 176–80.

The indictment goes on to allege that, after the state paid to ACS proceeds of the fraud, Trey Holladay, Carter (the ACS administrator tasked with overseeing ACS's virtual school, *see id.* at 2, ¶ 3), and Defendant Deborah Irby Holladay (Deborah Holladay) each received, for their own personal use, portions of those proceeds. *Id.* at 33–35, 56–60, ¶¶ 131–44, 231–51. The defendants obtained these monies through a series of transactions that involved: (1) payments

---

[1] The indictment alleges that both ACS and LCS falsely reported private school students during the 2016–2017 school year. Doc. 1 at 20–28, ¶¶ 74–105. For the 2017–2018 school year, the indictment alleges that ACS and another school district, the Conecuh County School District (CCS) engaged in the false reporting of private school students. *Id.* at 43–44, 39–49, ¶¶ 156–63, 171–75.

2

from ACS to a company owned by Defendant Gregory Earl Corkren; (2) cash payments by Corkren to Trey Holladay, Carter, and a company owned by co-defendant Defendant David Webb Tutt; (3) payments by Tutt to a company owned by Deborah Holladay; and (4) transfers made by Deborah Holladay from her company's accounts to personal accounts belonging to her and her husband, Trey Holladay. *See id.*[2]

**B.   Arraignment**

On March 4, 2021, each defendant appeared before a magistrate judge and pleaded not guilty to all counts. Doc. 80 (Trey Holladay); Doc. 81 (Deborah Holladay); Doc. 82 (Carter); Doc. 83 (Corkren); Doc. 84 (Tutt); Doc. 85 (Sisk).

**C.   Co-defendants' Guilty Pleas**

Thereafter, on April 8, 2021, Defendants Corkren, Tutt, and Sisk changed their pleas. Doc. 106 (Sisk); Doc. 110 (Corkren); Doc. 114 (Tutt). All three defendants pleaded guilty to the conspiracy offense alleged in count one. *See id.* Additionally, Corkren entered a guilty plea to the count of aggravated identity theft charged in count 93. Doc. 110.

On December 16, 2021, Defendant Trey Holladay likewise pleaded guilty to the conspiracy offense. Doc. 191. That day, the government requested leave to dismiss with prejudice the charges pending against Deborah Holladay. Doc. 192. On December 20, 2021, the Court dismissed the indictment against Deborah Holladay. Doc. 199. Doc. 199.

Presently, Carter is the only defendant proceeding to trial.

---

[2] Additionally, the indictment alleges that co-defendant Sisk received a cut of the proceeds after Corkren, at the direction of Sisk, made a payment to a charity and the charity then transferred most of the money it had received from Corkren to Sisk's personal account. Doc. 1 at 35, ¶¶ 144–45.

## II. ARGUMENT

**A.     The 404(b) evidence described in this motion is relevant to show motive and knowledge.**

As described above in more detail, Carter is accused of engaging in a conspiracy to fraudulently inflate the enrollment of Athens City Schools in order to increase the funding the district received from the state. As part of this fraud, Carter received cash payments from Corkren. In addition to this pecuniary motivation, in July 2019, Carter was named principal of the new Athens High School which was built, in part, using funds related to the scheme. This promotion was the culmination of a meteoric rise from technology teacher, the position for which Carter was first hired into the Athens City School system in August 2015.

The government expects Carter to argue that he had no motive outside his salary to take part in the charged conspiracy. In support of this argument, the government expects that Carter will contend that the cash payments he received from Corkren were intended to assist his mother after his father's death, rather than to compensate Carter for his role in the scheme. The jury will be left to wonder why Carter would risk his career to take part in the charged conspiracy. Furthermore, the government expects Carter to argue that to the extent he did engage in the fraud, he did so at the behest of his boss and superintendent, Trey Holladay, without the knowledge and understanding that his actions related to education funding were improper.

Consequently, at the trial of this case, the government intends to offer evidence that Carter had suffered severe career setbacks prior to his employment by Athens City Schools. Immediately prior to his hiring into the Athens system, he had resigned from his position as principal at Jacksonville High School following an investigation into wide-ranging wrongdoing.

This wrongdoing included allegations of irregular bookkeeping practices and that Carter improperly acquired district funds.

The Jacksonville City Board of Education accepted Carter's resignation on July 27, 2015. On August 4, 2015, Carter was hired as technology teacher, shortly after the job was posted by Athens City Schools. Less than four years later, he was hired as the principal of the high school. The government intends to argue that the motive for Carter to participate in the charged conspiracy included, in part, the rehabilitation of his career and the opportunity to serve as principal of a high school in a large, prestigious school district.

Moreover, because Carter's resignation from the Jacksonville system was related in part to misappropriation of funds and financial irregularities, Carter would have known the importance of open and honest practices when dealing with education funds. This knowledge undercuts any argument Carter may make or any assumption by the jury that Carter was simply doing what he was told, without recognizing the impropriety of his actions.

**B.    Rule 404(b) permits the government to introduce extrinsic evidence of prior acts for proper purposes.**

Rule 404(b) of the Federal Rules of Evidence provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Such evidence is not admitted automatically; the trial court must determine whether the probative value of such evidence is outweighed by the danger of unfair prejudice. *United States v. Beechum*, 582 F.2d 989, 911 (5th Cir. 1978). Thus, courts are to conduct a three-step analysis when considering 404(b) evidence. "For evidence of other crimes or acts to be admissible under

5

Rule 404(b), (1) it must be relevant to an issue other than defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Rule 403." *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (cleaned up).

### 1. The circumstances surrounding Carter's resignation from Jacksonville High School are relevant.

The first inquiry is into relevancy. Relevancy is defined as "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Beechum*, 582 F.2d at 911. "[M]otive is always relevant in a criminal case, even if it is not an element of the crime." *United States v. Hill*, 643 F.3d 807, 843 (11th Cir. 2011).

As discussed above, the 404(b) evidence the government intends to offer relates to Carter's motive for taking part in the conspiracy and thus endangering his career. The proffered evidence tends to prove that Carter's career was already endangered when he accepted a teaching job at Athens. The investigation into Carter's behavior as a principal in Jacksonville and his subsequent resignation would have presented a grave obstacle to any future hopes Carter may have had to be a senior administrator in education again. The conspiracy offered Carter an opportunity to rebuild his career and become principal of a large, new high school in a major school system. Furthermore, Carter's experience at Jacksonville would have made him aware of the importance of accurate and honest practices related to school funding.

2. **The government will provide sufficient evidence of the circumstances of Carter's resignation from Jacksonville High School.**

Once the government establishes that the other acts evidence is relevant, the next step is to provide "sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question." *Edouard*, 485 F.3d at 1344. The government intends to call witnesses who can testify to the circumstances surrounding the investigation and resignation of Carter from Jacksonville High School.

3. **Evidence of Carter's work history immediately prior to his employment at Athens City Schools and the beginning of the conspiracy meets the requirements of Rule 403.**

After the relevancy and proof determinations are made, the court must then consider whether the 404(b) evidence comports with the requirements of Rule 403. Rule 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The Eleventh Circuit has cautioned, "Rule 403 is an extraordinary remedy, which should be used only sparingly since it permits the trial court to exclude concededly probative evidence." *United States v. Smith,* 459 F.3d 1276, 1295 (11th Cir. 2006) (cleaned up). Further, "it is only when *unfair* prejudice substantially outweighs probative value that the rule permits exclusion." *Edouard*, 485 F.3d at 1346. "The balance under the Rule, therefore, should be struck in favor of admissibility." *Smith*, 459 F.3d at 1295; *see United States v. LaFond*, 783 F.3d 1216, 1222 (11th Cir. 2015) (finding that evidence of membership in a white supremacist gang admitted for the purpose of showing motive and intent did not violate Rule 403).

A balancing of the probative value of the proffered evidence shows that it is not substantially outweighed by Rule 403 considerations. The investigation into Carter's tenure at Jacksonville High School and his subsequent resignation were completed mere days before Carter was hired as a teacher at Athens. As detailed in the indictment, Carter was hired as a technology teacher by Athens City Schools in August 2015. Doc. 1 at 2 ¶3. By October of that year, he had been promoted to Coordinator of Virtual Programs. *Id.* Less than a year later, in June 2016, Carter was promoted again, this time to Director of Innovative Programs. *Id.* He was promoted to Executive Director of Innovative Programs in July 2017. *Id.* The evidence further shows that in July 2018, Holladay recommended and the Athens Board of Education approved Carter's appointment as interim principal of Athens Middle School. And a year later, Carter became principal of Athens High School. Carter's resignation from Jacksonville High School, juxtaposed with his rapid ascent in the Athens system, is highly probative of Carter's motive to participate in the conspiracy.

Furthermore, Carter's experience at Jacksonville would have made him keenly aware of the importance of open and honest practices when dealing with education funding. Carter had undergone an investigation into his financial practices while principal at Jacksonville High School. He was forced to resign from his position, in part, because of improprieties involving education funding. This information is highly probative of any claim Carter might now make that he was simply doing what he was told by a superior, without knowledge that his actions may have been improper.

Finally, the probative value of this evidence is not outweighed by its unfair prejudicial effect. The circumstances of Carter's departure from Jacksonville High School are temporally

proximate to the events of the conspiracy. Moreover, the 404(b) evidence, "is not of a heinous nature; it would hardly incite the jury to irrational decision by its force on human emotion." *Beechum*, 582 F.2d at 917. The evidence will not confuse the issues, mislead the jury, or waste time. And the Court can and should instruct the jury as to the proper use of this evidence and its limitations. *See LaFond*, 783 F.3d at 1222 ("[T]he district court lessened the prejudicial impact when it repeatedly instructed the jury to consider the evidence for only the limited purpose of proving intent and motive.").

### III. CONCLUSION

Based on the foregoing, the government asks that the Court permit the admission of the above described extrinsic evidence.

Respectfully submitted, this 27th day of December, 2021.

VERNE H. SPEIRS
ATTORNEY FOR THE UNITED STATES
ACTING UNDER AUTHORITY
CONFERRED BY 28 U.S.C. § 515

/s/Brett J. Talley
Brett J. Talley
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
Phone: (334) 223-7280
E-mail: brett.talley@usdoj.gov

/s/Alice S. LaCour
Alice S. LaCour
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
Phone: (334) 223-7280
E-mail: alice.lacour@usdoj.gov

/s/Jonathan S. Ross
Jonathan S. Ross
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
Phone: (334) 223-7280
E-mail: jonathan.ross@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:21-CR-49-MHT-JTA-3 |
| | ) | |
| WILLIAM RICHARD CARTER, JR. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 27, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Respectfully submitted,

/s/Brett J. Talley
Brett J. Talley
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
Phone: (334) 223-7280
E-mail: brett.talley@usdoj.gov

11