IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:21-cr-49-MHT |
| | ) | |
| WILLIAM LEE HOLLADAY, III | ) | |
| DEBORAH IRBY HOLLADAY, | ) | |
| WILLIAM RICHARD CARTER, | ) | |
| JR. | ) | |
| GREGORY EARL CORKREN, | ) | |
| DAVID WEBB TUTT, | ) | |
| THOMAS MICHAEL SISK | ) | |

## DEFENDANT CARTER'S RESPONSE TO GOVERNMENT'S MOTION IN LIMINE TO USE A REDACTED INDICTMENT AND PERMIT THE JURY TO HAVE A COPY OF THE INDICTMENT DURING TRIAL

**COMES NOW**, William Richard Carter (Carter), and through undersigned counsel and respectfully requests that the Court enter an Order prohibiting the Government from redacting the Indictment and to prohibit the jury from receiving a copy of the indictment during trial.  In support, Carter states:

1

**THE JURY HAVING A COPY OF THE INDICTMENT DURING TRIAL**

Rule 7 of the Federal Rules of Criminal Procedure dictates that a federal indictment should contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged."[1] To pass constitutional muster, an indictment must "first, contain the elements of the offense charged and fairly inform a defendant of the charge against which he must defend, and, second, enable him to plead an acquittal or conviction in bar of future prosecutions for the same offense."[2] In practice, perhaps motivated by a desire to include all arguable legal and factual theories, or perhaps to head off defense demands for bills of particulars providing additional specifics, federal prosecutors pursuing even moderately complex cases rarely prepare "concise" indictments.

By example, here, the Government filed a "speaking indictment." (Dkt. 1).  In this case, the Indictment not only "speaks", but it is an 80-page expatiation containing 265+ separate paragraphs.  It takes 15 pages of reading background and explanation of the government's theory of the facts before the reader even encounters Count 1.  There, in Count 1 alone,

---

[1] Fed.R.Crim.P. 7(c)(1)
[2] *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (internal citations omitted).

a conspiracy count, government-written descriptions of additional purported facts and theories are delineated in nearly 200 separate paragraphs found amongst 44 pages.

In the current request, the government writes, "…Although the redacted indictment is neither evidence nor a script of the proceedings, having a copy of the redacted indictment may assist the jury in clarifying the evidence presented and associating the correct evidence with each count." (Dkt. 205 p. 3).  Thus, the government would like the jury to use a roadmap, prepared by the government and one that is not admitted into evidence, to "associate" the "correct" evidence.  This request merits comparison in this context to other non-evidentiary advocacy statements by counsel—opening statements and summations—to which giving the jury repeated access is highly disfavored.[3]  Indeed, recognizing that "[w]hen the deliberative process is interrupted by the jury's re-exposure to one party's view of the evidence and how it should be applied, its function is in some sense inevitably skewed, resulting in prejudice to the other party." *Id* at 62.

Further, allowing the Indictment to be in the hands of the jury would allow the government-authored Indictment, i.e. extrinsic evidence, to be

---

[3] *See United States v. Arboleda*, 20 F.3d 58 (2d Cir. 1994) (read-back of prosecutor's rebuttal summation warranted reversal of conviction); *United States v. Guanti*, 421 F.2d 792, 801 (2d Cir. 1970) (trial court did not commit error by denying jury's request for defense counsel summation)

considered.  "It is clearly established law that extrinsic evidence, that is, evidence that does not "come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel," is presumptively prejudicial. *Turner v. Louisiana*, 379 U.S. 466, 473, 85 S. Ct. 546, 549, 13 L. Ed. 2d 424 (1965); *see also U.S. v. Remmer*, 347 U.S. 227, 229, 74 S. Ct. at 451; *United States v. Martinez*, 14 F.3d 543 (11th Cir. 1994).

The government also writes that giving the jury the 80-page, government-written details "…would ensure that any conviction obtained is decided on an accurate finding of guilt in light of the evidence presented." (Dkt. 205, p.3).  While the government's concern for accuracy is commendable, the defense takes issue with the Indictment's rendition of facts and therefore its accuracy.  Factual disputes result in trials, subject to rules of evidence, cross-examination, Court instructions and verdict forms. As the fact-finders, the jury should come to the courthouse and sit with no pre-conceived notions of any fact and sit with the ability to form their own conclusions about each witness and piece of evidence and devote its sole attention on the demeanor and manner of each witness without a one-sided cheat-sheet, but with the guidance from a neutral arbiter, the Court, in the form of pre-trial and post-trial jury instructions.  After all, your undersigned

anticipates that the Court will read the 11th Circuit Pattern Jury Instruction 1 that includes:

> 5. Do not read, watch, or listen to any accounts or discussions related to the case which may be reported by newspapers, television, radio, the Internet, or any other news media.[4]

The reason the pattern instructions include this admonition is that we do not want our jurors to be influenced by any extrinsic view of the case. In fact, it particularly states that we do not want another "account" of the facts to be considered by the jury. The government's Indictment is just that, an extrinsic account of what it believes occurred. To allow a jury to consider it would be violative of what we know-- that jurors are susceptible to extrinsic accounts. The instruction goes on to state that these rules, including #5 above, are designed to help guarantee a fair trial.

The government's basis for providing its purported roadmap evaporates when the jury receives a written copy of the jury charge. The one-sided, extrinsic, government-created Indictment hardly seems to be a good substitute for the Court's instructions for use during trial.

This Indictment is a speaking indictment. Giving the jury a written statement of the government's views during trial would be a significant

---

[4] 11th Circuit Pattern Jury Instructions, 2011, Number 1.

procedural advantage available only to the government. The prosecution already gets the benefit of a second summation and the last word through its rebuttal following the defense's summation.  Allowing a third rendition is unfair and presents other minefields of prejudice.  For example, how is the jury to ignore "facts" and "theories" written into this speaking indictment juxtaposed with the failure to prove same via a witness or an exhibit at the trial?  A speaking indictment does more than accuse, it purports to have a governmental sponsored stamp of approval of its truth.

## GOVERNMENT USING A REDACTED INDICTMENT

If the Court does not give the jury a copy of the Indictment, the issue of redacting it will become moot.  If the Court is inclined to provide a copy of the Indictment to the jury, Carter objects to any redactions for the following reasons:

The government on one hand wishes to allow the jury to have a copy of the Indictment before any evidence is taken and at the same time, wishes to conceal, from that very jury, the whole truth about what it contains.   The government seemingly urges fairness for Carter by stating, "Furthermore, because the proposed redactions involve counts and

allegations that are not necessary to prove Carter's offenses, leaving them unredacted could be prejudicial to Carter as the trial would include his co-defendant's wrongful acts." (Dkt. 205 p. 2-3).

While your undersigned appreciates the government's concern for Carter's prejudice, to be clear, it is Carter's position that the introduction of a redacted Indictment would be prejudicial to his trial.  Carter is charged with conspiring with William Holladay, Deborah Holladay, Gregory Corkren, David Tutt, and Thomas Sisk. (Dkt. 1 p. 16).  Carter will, via cross and direct examinations, elicit much of the proposed redactions in an effort to exonerate him from his co-defendant's acts.  It will be Carter who highlights his co-defendant's acts.  If the Court provides the jury with a copy of a redacted Indictment, it will appear to the jury that Carter is asking questions and eliciting answers far afield from the government's investigation and conclusions made by law enforcement.  A redacted copy would serve as an impediment to Carter to distance himself from his co-defendants' acts. Refreshing recollections, impeaching testimony, and bias testimony will be elicited from Carter and will be forthcoming and stemming from the original Indictment.  Carter anticipates using the specter of the original Indictment to drive points home and to show biases.

Further, the government will have to prove and persuade the jury to determine whether it can reasonably find that the evidence establishes a single conspiracy beyond a reasonable doubt, considering: (1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants. This will require extensive cross-examination and direct examination of the participants and attendant witnesses, much of which will come from the proposed redactions.  Although separate transactions are not necessarily separate conspiracies, the government must prove that the conspirators acted in concert to further a common goal. Carter has a 6th Amendment Constitutional right to ferret out his theory of the case through vigorous cross-examination.  If Carter's acts did not facilitate the endeavors of other co-conspirators, or facilitate the venture as a whole, a single conspiracy cannot be established.  Much of the proposed redacted material will serve Carter's purposes.

So, if the Court is inclined to provide a copy of the Indictment to the jury for the reasons urged by the government, Carter urges that an unredacted copy of the Indictment, if provided, will serve to "assist the jury in clarifying the evidence presented and associating the correct evidence with each count", as the government so advocated.

Secondly, the government urges that "…allowing the United States to proceed with a redacted indictment would streamline the trial and conserve court resources." (Dkt. 205 p. 2). This position should be quickly dismissed. The government's case, including witnesses called and exhibits admitted, will not change one iota if the Indictment is not redacted. Redacted or not, the government will put forth all relevant evidence to convict Carter of the crimes charged and not any additional evidence for any superfluous purpose.

## CONCLUSION

Carter requests that the Court not provide his jury with a copy of the Indictment. Although not requested by the government in its motion (Dkt. 205), your undersigned also objects to a copy being provided at the conclusion of the trial for use during deliberations, for all the same reasons stated above. If the Court disagrees with Carter and wishes to provide the jury with a copy of the Indictment at any stage of the case, Carter requests that the entire Indictment, as returned by the grand jury, be provided.

Lastly, your undersigned has noted that the government has changed the caption of the case to reflect something other than what the grand jury returned. Respectfully, Carter requests that the caption of the case remain

as it was signed by the foreperson of the grand jury, as it reflects the truth.

Carter's jury is entitled to know the truth, especially after most have pled

and the government requested the dismissal of charges of the wife of one

co-defendant in exchange for the guilty plea of another.  This unilateral

changing highlights the danger of giving the jury a copy of the Indictment.


Respectfully submitted, this 11th day of January, 2022.



**/s/ Kepler B. Funk**
Kepler B. Funk, Esquire
Keith F. Szacahcz, Esquire
Alan S. Diamond, Esquire
FUNK, SZACHACZ & DIAMOND, LLC
3962 W. Eau Gallie Blvd.; Suite B
Melbourne, Florida 32934
321.953.0104
*Pro Hac Vice* counsel for **CARTER**



## CERTIFICATE OF SERVICE


I hereby certify that on January 11, 2022, I electronically filed the
foregoing with the Clerk of the Court using CM/ECF system which will send
notification of such filing to all counsel of record.

Respectfully submitted,

**/s/ Kepler B. Funk**
Kepler B. Funk, Esquire
Keith F. Szachacz, Esquire
Alan S. Diamond, Esquire
FUNK, SZACHACZ & DIAMOND, LLC
3962 W. Eau Gallie Blvd.; Suite B
Melbourne, Florida 32934
321.953.0104
*Pro Hac Vice* counsel for **CARTER**