IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                        ) | CASE NO. 2:21-cr-49-MHT |
| ) | |
| WILLIAM LEE HOLLADAY, III ) | |
| DEBORAH IRBY HOLLADAY,    ) | |
| WILLIAM RICHARD CARTER,   ) | |
| JR.                       ) | |
| GREGORY EARL CORKREN,     ) | |
| DAVID WEBB TUTT,          ) | |
| THOMAS MICHAEL SISK       ) | |

**DEFENDANT CARTER'S RESPONSE TO GOVERNMENT'S
NOTICE OF INTENT TO USE 404(B) EVIDENCE**

**COMES NOW**, William Richard Carter (Carter), and hereby files his response. In support, Carter states:

Rule 404 provides in pertinent part,

(b) Other Crimes, Wrongs, or Acts.

(1) *Prohibited Uses.* Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

1

> (2) *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.
>
> (3) *Notice in a Criminal Case.* In a criminal case, the prosecutor must:
>
> (A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
>
> (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
>
> (C) do so in writing before trial—or in any form during trial if the court, for good cause, excuses lack of pretrial notice.
>
> Fed. R. Evid. 404.

As a threshold matter, as written in the rule, the government must identify "the evidence" so that Carter can meet it and the Court can analyze its purported use. In its request for admission (Dkt. 203), the government's filing provided vague, conclusory language and theories and did not articulate appropriate evidence and/or crimes, wrongs or acts of Carter that the government wishes to offer. To the extent Carter can reply, Carter will analyze the filing as written by the government.

To begin, the government theorized that Carter will contend that he knowingly participated in the conspiracy charged, received cash payments

2

from Mr. Corkren but will somehow state that the payments he accepted were to help Carter's mother after Carter's father died. (Dkt. 203 p. 4).  On the other hand, and at the same time, the government theorized that Carter will somehow contend that he unknowingly participated in the fraudulent scheme. (Dkt. 203 p. 4).

Finally, on page 4 of its filing (Dkt. 203), the government simply wrote, "Consequently, at the trial of this case, the government intends to offer evidence that Carter had suffered severe career setbacks prior to his employment by Athens City Schools." This is the sum total of the notice of wrongs, crimes or acts the government seeks to admit via its filing in Dkt. 203.

After this "notice", the government wrote that Carter "…had resigned from his position as principal at Jacksonville High School following an investigation into wide-ranging wrongdoing." (Dkt. 203 p. 4).  Next, the government stated that "this wrongdoing included allegations of irregular bookkeeping practices and that Carter improperly acquired district funds." (Dkt. 203 p. 5).  The government, here, stated that the wrongdoing included mere "allegations" and not any particular acts done by Carter or evidence of any act(s) committed by Carter.  The government then attempted to tether the purported vague allegations into its argument and theory that

3

Carter joined the charged conspiracy to rehabilitate his career. The government theorized that because Carter resigned, due in part to "misappropriation of funds and financial irregularities, Carter would have known the importance of open and honest practices when dealing with education funds." (Dkt. 203 p. 5). This, the government urges, rebuts that Carter unknowingly participated in the charged conspiracy. One must read the filing closely. Nowhere, did the government state what "act" or "wrong" it intends to introduce. In fact, the only insight that Carter is on notice for here is exactly what the government wrote, that it "intends to offer evidence that Carter had suffered severe career setbacks." Somehow, the government then leapt to the conclusion that Carter's knowledge about allegations of misappropriation of funds, not necessarily done by him, undermines a purported argument by Carter that he was simply doing what he was told during the charged conspiracy.

The government next cited to *U.S. v. Edouard*, 485 F.3d 1324 (11th Circ. 2007) for the appropriate analysis. There,

> "Rule 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's character in order to show action in conformity therewith. Fed. R. Evid. 404(b). Such evidence 'may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.' Fed. R. Evid. 404(b).

4

> For evidence of other crimes or acts to be admissible under Rule 404(b), (1) it must be relevant to an issue other than defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Rule 403. *United States v. Chavez*, 204 F.3d 1305, 1317 (11th Cir. 2000).

> *Edouard* at 1344.

The government then wrote, "The proffered evidence tends to prove that Carter's career was already endangered when he accepted a teaching job at Athens." (Dkt. 203 p. 6). Assuming *arguendo* that Carter had "suffered severe career setbacks", this is not evidence of a crime, wrong or act committed by Carter as contemplated by Rule 404(b). The Government nefariously and silently suggests that his resignation was the result of some crime, wrong or bad act done by Carter without stating what bad act, crime or wrong he actually committed.

"Suffering a career setback" which is the only evidence the government has noticed, is not evidence of other crimes or acts admissible under Rule 404(b) as articulated in *Edouard*. In the three-prong analysis therein, the first prong requires that "it" must be relevant to an issue other than character. Naturally, "it", as contemplated by the rule, refers to the crime, wrong or act sought for admission. Here, there is no "it" offered by

5

the government.  If the government wishes to seek the admission of particular crimes, wrongs or bad acts that led to severe career setbacks and those acts are relevant, Carter demands notice of same.  Here, the Court cannot get past the first prong of *Edouard* to analyze whether "it" is relevant to an appropriate issue other than character.

The next inquiry routinely requires that there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question. *Id*.  It is axiomatic that the government reveal what the "committed acts in question" were so that a defendant can meet them and so that an analysis can be performed by the Court.  Of course, "As a predicate to the introduction of extrinsic act evidence, the government must first prove that the defendant actually committed the offense." *United States v. Guerrero*, 650 F.2d 728, 733 (5th Cir. 1981); *United States v. Jimenez*, 613 F.2d 1373, 1376 (5th Cir. 1980), (citing *United States v. Beechum*, 582 F.2d 898, 912-13 (5th Cir. 1978)). *United States v. Dothard*, 666 F.2d 498, 502 (11th Cir. 1982).

"Suffering a career setback" is a conclusion or opinion, not a crime, wrong or act.  Carter must be noticed of the crime, wrong or act he is accused of so he may test the government's burden and threshold requirement before their admission, that he actually committed them.  The

government adeptly suggested acts that led to a career setback, but it never articulated them in its filing.  Given the Government's filing, at this point, even the Court cannot be convinced that a jury could reasonably find that Carter committed the alleged prior act and thus, it is inadmissible for its consideration.

The point is further illustrated throughout the government's filing.  It stated, "The investigation into Carter's behavior…and his subsequent resignation would have presented a grave obstacle to any future hopes Carter may have had to be a senior administrator in education again." (Dkt. 203 p. 6).  Again, the government attempted to label its conclusions as evidence without delineating the crime, wrong or acts by Carter as required by the Rule and as required for legal analysis.  The government's "grave obstacle" statement to the Court is interesting since the government surely knows that Carter was an Assistant Principal after Jacksonville but prior to taking a job in Athens.  These governmental conclusions and opinions and this governmental misinformation highlight the need to ferret out exactly which crimes, wrongs or acts the government is referring to, if any.

The filing stated, "Furthermore, Carter's experience at Jacksonville would have made him aware of the importance of accurate and honest practices related to school funding." (Dkt. 203 p. 6).  "Carter's experiences"

7

are not crimes, wrongs or acts contemplated by the rule. Again, the government is reciting mere conclusions without spelling out requisite acts committed by Carter, as required. The government went on and stated that it, "…intends to call witnesses who can testify to the circumstances surrounding the investigation and resignation of Carter from Jacksonville High School." (Dkt. 203 p. 7).  That sentence apprises Carter and the Court of no crime, wrong or bad act committed by Carter.  Carter committed no crimes, wrongs, or acts and suffered no career setback and this filing is simply an attempt to besmirch his character, a prohibited reason.

    The government ends its filing citing to Rule 403 and followed the citations with an attempt to analyze this case. (Dkt. 203 p. 7,8).  The entire first paragraph of page 8 recited Carter's chronology within Athens City Schools.  It delineated that he was hired and then promoted on numerous occasions over a four-year period.  The government's purported 403 analysis included not one single reference to any crime, wrong or act committed by Carter.  The second paragraph on page 8 reiterated, "…Carter's experience at Jacksonville would have made him keenly aware of the importance of open and honest practices when dealing with education funding.  Carter had undergone an investigation into his financial

practices while principal at Jacksonville High School." Nowhere is it stated that he committed a crime, wrong or act as contemplated by Rule 404.

The government stated that, "He was forced to resign his position, in part, because of improprieties involving education funding." (Dkt. 203 p. 8). This conclusory sentence, once again, raised the inference that the "improprieties" were of Carter's doing without specifically so stating what acts, crimes or wrongs he actually did. Carter did nothing wrong that "led to his resignation" and he committed no act that was an "impropriety of education funding" and he demands notice of any specific act to which the government refers. Surely, the government knows that it was Carter who received a settlement from Jacksonville City Schools not to sue them after his resignation. It is an interesting conclusion to draw that a school system would write a sizable check to Carter if he were the one committing crimes, wrongs, or bad acts. Given the government's one-sided conclusory comments in its filing, the requirement that the government must allege the act, crime or wrong and first prove that the defendant actually committed the act, crime or wrong was never more important than here.

The government wrote, "Finally, the probative value of this evidence is not outweighed…" (Dkt. 203 p. 8). Carter asks respectfully, what evidence? The only prior crime, wrong or act evidence the government

9

seeks for admission in this filing is that Carter "suffered a career setback." Given that the government has not met the requirements of Rule 404, no intellectually honest 403 analysis can be completed. Given the filing, Carter and the Court cannot know what wrong, act or crime the government seeks to admit.

Lastly, as previously noted, the Government wrote that Carter would contend that he knowingly participated in the conspiracy charged, received cash payments from Mr. Corkren, but will state that the payments he accepted were to help Carter's mother after Carter's father died. (Dkt. 203 p. 4). Although this passage is contained in this governmental 404 filing, Carter fails to see any purpose for its inclusion nor any argument for its applicability to the 404 notice as written and therefore is not responding to it.

## CONCLUSION

As filed, the government's notice found in Document 203 does not comply with Rule 404(b). As a result, the Court cannot conduct an appropriate analysis, Carter cannot properly defend against it, and therefore the Court must deny same. If the government seeks to amend its filing that comports with the rule and places Carter on notice of the acts,

wrongs, or crimes it seeks to admit, Carter respectfully requests it do so expeditiously, given the looming trial date. Carter respectfully requests that this Court enter an Order prohibiting the Government's Notice of Intent to Use 404(b) Evidence (Document 203).

Respectfully submitted, this 14th day of January, 2022.

**/s/ Kepler B. Funk**
Kepler B. Funk, Esquire
Keith F. Szachacz, Esquire
Alan S. Diamond, Esquire
FUNK, SZACHACZ & DIAMOND, LLC
3962 W. Eau Gallie Blvd.; Suite B
Melbourne, Florida 32934
321.953.0104
*Pro Hac Vice* counsel for **CARTER**

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to all counsel of record.

        Respectfully submitted,

**/s/ Kepler B. Funk**
Kepler B. Funk, Esquire
Keith F. Szachacz, Esquire
Alan S. Diamond, Esquire
FUNK, SZACHACZ & DIAMOND, LLC
3962 W. Eau Gallie Blvd.; Suite B
Melbourne, Florida 32934
321.953.0104
*Pro Hac Vice* counsel for **CARTER**