## UNITED STATES DISTRICT COURTMIDDLE DISTRICT ALABAMA NORTHERN DIVISION

UNITED STATES OF AMERICA )
                                                          )
v.                                                        )
                                                          )   Case No. 2:21-cr-49-MHT-JTA
WILLIAM LEE HOLLADAY, III          )
DEBORAH IRBY HOLLADAY              )
**WILLIAM RICHARD CARTER, JR**. )
GREGORY EARL CORKREN                )
DAVID WEBB TUTT                          )
THOMAS MICHAEL SISK                   )

## DEFENDANT CARTER'S RESPONSE TO THE GOVERNMENT'S NOTICE OF ITS POSITION ON MASKING AND THE CONFRONTATION CLAUSE

**COMES NOW**, William Richard Carter, by and through Alan Diamond,

Kepler B. Funk, and Keith Szachacz of Funk, Szachacz & Diamond, LLC.,

3962 West Eau Gallie Blvd. Suite B, Melbourne, FL 32934 and files this

response:

Document 235 orders Carter to file a response to the government's

notice found in document 233.

The Sixth Amendment to the U.S. Constitution provides for an

unimpeded opportunity to cross-examine adverse witnesses face-to-face

and in full view of the jury.  The Confrontation Clause of the Sixth

Amendment, made applicable to the States through the Fourteenth

Amendment, provides: "In all criminal prosecutions, the accused shall enjoy

the right . . . to be confronted with the witnesses against him."

In 1990, the U.S. Supreme Court addressed the Confrontation Clause

in depth:

> We observed in *Coy* v. *Iowa* that "the Confrontation Clause
> guarantees the defendant a face-to-face meeting with witnesses
> appearing before the trier of fact." 487 U.S. at 1016 (citing *Kentucky*
> v. *Stincer*, 482 U.S. 730, 748, 749-750, 96 L. Ed. 2d 631, 107 S. Ct.
> 2658 (1987) (MARSHALL, J., dissenting)); see also *Pennsylvania* v.
> *Ritchie*, 480 U.S. 39, 51, 94 L. Ed. 2d 40, 107 S. Ct. 989 (1987)
> (plurality opinion); *California* v. *Green*, 399 U.S. 149, 157, 26 L. Ed.
> 2d 489, 90 S. Ct. 1930 (1970); *Snyder* v. *Massachusetts*, 291 U.S.
> 97, 106, 78 L. Ed. 674, 54 S. Ct. 330 (1934); *Dowdell* v. *United
> States*, 221 U.S. 325, 330, 55 L. Ed. 753, 31 S. Ct. 590 (1911); *Kirby*
> v. *United States*, 174 U.S. 47, 55, 43 L. Ed. 890, 19 S. Ct. 574 (1899);
> *Mattox* v. *United States*, 156 U.S. 237, 244, 39 L. Ed. 409, 15 S. Ct.
> 337 (1895). This interpretation derives not only from the literal text of
> the Clause, but also from our understanding of its historical roots. See
> *Coy, supra*, 487 U.S. at 1015-1016; *Mattox, supra*, 156 U.S. at 242
> (Confrontation Clause intended to prevent conviction by affidavit);
> *Green, supra*, 399 U.S. at 156 (same); cf. 3 J. Story, Commentaries
> on the Constitution § 1785, p. 662 (1833).
>
> We have never held, however, that the Confrontation Clause
> guarantees criminal defendants the *absolute* right to a face-to-face
> meeting with witnesses against them at trial. Indeed, in *Coy* v. *Iowa*,
> we expressly "left for another day . . . the question whether any
> exceptions exist" to the "irreducible literal meaning of the Clause: 'a
> right to *meet face to face* all those who appear and give evidence *at
> trial*.'" 487 U.S. at 1021 (quoting *Green, supra*, 399 U.S. at 175
> (Harlan, J., concurring)). The procedure challenged in *Coy* involved
> the placement of a screen that prevented two child witnesses in a

child abuse case from seeing the defendant as they testified against him at trial. See 487 U.S. at 1014-1015. In holding that the use of this procedure violated the defendant's right to confront witnesses against him, we suggested that any exception to the right "would surely be allowed only when necessary to further an important public policy" -- *i. e.*, only upon a showing of something more than the generalized, "legislatively imposed presumption of trauma" underlying the statute at issue in that case. *Id.*, at 1021; see also *id.*, at 1025 (O'CONNOR, J., concurring). We concluded that "since there had been no individualized findings that these particular witnesses needed special protection, the judgment [in the case before us] could not be sustained by any conceivable exception." *Id.*, at 1021. Because the trial court in this case made individualized findings that each of the child witnesses needed special protection, this case requires us to decide the question reserved in *Coy*.

The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact. The word "confront," after all, also means a clashing of forces or ideas, thus carrying with it the notion of adversariness. As we noted in our earliest case interpreting the Clause:

"The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox, supra*, 156 U.S. at 242-243. As this description indicates, the right guaranteed by the Confrontation Clause includes not only a "personal examination," 156 U.S. at 242, but also "(1) insures that the witness will give his statements under oath -- thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; [and] (3) permits the jury that is to decide the defendant's fate to observe

the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." *Green, supra*, at 158 (footnote omitted). The combined effect of these elements of confrontation -- physical presence, oath, cross-examination, and observation of demeanor by the trier of fact -- serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings. See *Stincer, supra*, at 739 ("The right to confrontation is a functional one for the purpose of promoting reliability in a criminal trial"); *Dutton* v. *Evans*, 400 U.S. 74, 89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970) (plurality opinion) ("The mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the [testimony]'"); *Lee* v. *Illinois*, 476 U.S. 530, 540, 90 L. Ed. 2d 514, 106 S. Ct. 2056 (1986) (confrontation guarantee serves "symbolic goals" and "promotes reliability"); see also *Faretta* v. *California*, 422 U.S. 806, 818, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975) (Sixth Amendment "constitutionalizes the right in an adversary criminal trial to make a defense as we know it"); *Strickland* v. *Washington*, 466 U.S. 668, 684-685, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).

We have recognized, for example, that face-to-face confrontation enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person. See *Coy, supra*, 487 U.S. at 1019-1020 ("It is always more difficult to tell a lie about a person 'to his face' than 'behind his back.' . . . That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult"); *Ohio* v. *Roberts*, 448 U.S. 56, 63, n.6, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980); see also 3 W. Blackstone, Commentaries *373-*374. We have also noted the strong symbolic purpose served by requiring adverse witnesses at trial to testify in the accused's presence. See *Coy*, 487 U.S. at 1017 ("There is something deep in human nature that regards face-to-face confrontation between accused and accuser as 'essential to a fair trial in a criminal prosecution'") (quoting *Pointer* v. *Texas*, 380 U.S. 400, 404, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965)).

*Maryland v. Craig*, 497 U.S. 836, 844-847 (1990).

Here, there are no individualized findings that any particular witness needs special protection.  As a result, there should be no presumption of any need for protection nor any assumed trauma to any witness if they testify without a face-covering. Further, the vaccination status and booster status and underlying health status of each witness, is unknown to Carter as well as to the litigants and to the Court.  To be sure, attitudes toward mandatory masking are subject to intense debate.[1]

Carter understands, as best as anyone can, the current Covid-19 and Omicron Variant infecting many in the U.S.  Further, Carter understands the Court's duty to keep, as best as possible, all who enter the courtroom as safe as possible. All viruses are potentially lethal.  For example, the overall burden of flu for the 2017-2018 season was an estimated 41 million flu-related illnesses, 19 million flu-related medical visits, 710,000 flu-related hospitalizations, and 52,000 flu-related deaths.[2]  During 2017-2018, Carter is unaware of any mandates that required witnesses to wear face-coverings as he/she testified.

In an effort to resolve the issue(s) and in order to fulfill the Constitutional mandate of the Sixth Amendment's Confrontation Clause,

---

[1] https://www.washingtonpost.com/dc-md-va/2022/01/23/dc-anti-vaccine-rally-mandates-protest/

[2] https://www.cdc.gov/flu/about/burden/2017-2018.htm

Carter proposes that upon the calling of a witness, every witness enter the courtroom with his/her mask on and that every attorney remain at counsel table with his/her mask on. Only after being sworn, Carter requests that the witness remove their mask upon questioning by counsel and/or the Court. Upon conclusion of the testimony and prior to their exit from the witness stand, Carter suggests the witness don the mask once again for their exit out of the witness stand and out of the courtroom. Simultaneously, Carter requests that only the questioning attorney and only upon reaching the lectern, he or she be permitted, if they wish, to remove his/her mask for questioning. Like the witness, upon conclusion of the witness's testimony, the attorney should don his/her mask prior to leaving the lectern and returning to counsel table. The witness and the attorney at the lectern can be socially distanced from the jury and court personnel. (Six feet). To be clear, counsel for Carter do not wish to wear a mask at any stage of the trial but especially not during questioning of witnesses and addressing the jury.

Alternatively, Carter requests that witnesses who wish to wear a mask while testifying wear a clear face shield so the jury can view the face of the witness while testifying. This would seemingly strike a balance of minimizing any purported health risks and retaining the full force of Carter's Sixth Amendment Confrontation right.

6

## **CONCLUSION**

In the case here, since there have been no individualized findings that any particular witness needs special protection, to require every witness to wear a face-covering while testifying would be violative of the Confrontation Clause of the Sixth Amendment.  Without individual findings of each witness's need for protection, mere assumptions of some speculative need for protection does satisfy the right to confrontation.  The Sixth Amendment recognizes that, "There is something deep in human nature that regards face-to-face confrontation between accused and accuser as 'essential to a fair trial in a criminal prosecution'"). *Pointer* at 404.

**WHEREFORE**, Carter respectfully requests that the Court enter an Order prohibiting witnesses from wearing face-covering masks while testifying and allowing attorneys, if they wish, to question witnesses and address the jury without masks on.

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to the United States Attorney's Office by CMECF delivery this 26th day of January 2022.

__/s/ Kepler B. Funk_____
**Kepler B. Funk, Esquire**
**Keith F. Szachacz, Esquire**
**Alan S. Diamond, Esquire**
FUNK, SZACHACZ & DIAMOND, LLC
3962 West Eau Gallie Blvd. Suite B.
Melbourne, Florida 32934
(321) 953-0104
Florida Bar No. 0949698, 957781 & 973866
alan@fsdcrimlaw.com; kep@fsdcrimlaw.com
Attorneys for Defendant CARTER